UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
CHEOLWNG LEE, individually and on
behalf of others similarly situated,

        Plaintiff,

     -against-

SKY WORLD COURIER EXPRESS, INC.
d/b/a Sky World Courier Express d/b/a
Sky World Courier Expres, SNS GLOBAL
LOGISTIC INC. d/b/a Sky World Courier
Express d/b/a PSP Logistics NY d/b/a Sky
World Courier Expres, SEUNG JOON OH
a/k/a Seungjoon Oh, YOAN KIM a/k/a
Yo Han Kim, and, BENJAMIN CHANG
a/k/a Benjamin Bong Chang a/k/a
Bong Gu Chang,

        Defendants.
------------------------------------------------------X

REPORT AND
RECOMMENDATION
25 CV 1393 (AMD)(RML)

LEVY, United States Magistrate Judge:

Pending before me, on referral from the Honorable Ann M. Donnelly, United States District Judge, is plaintiff's motion for settlement approval pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).  For the reasons stated below, I respectfully recommend that the motion be denied without prejudice.

**BACKGROUND**

Plaintiff Cheolwng Lee ("plaintiff" or "Lee") filed this action against his former employers, SKY WORLD COURIER EXPRESS, INC. d/b/a Sky World Courier Express d/b/a Sky World Courier Expres, SNS GLOBAL LOGISTIC INC. d/b/a Sky World Courier Express d/b/a PSP Logistics NY d/b/a Sky World Courier Expres, SEUNG JOON OH a/k/a Seungjoon Oh, YOAN KIM a/k/a Yo Han Kim, and BENJAMIN CHANG a/k/a Benjamin Bong Chang a/k/a Bong Gu Chang (collectively, "defendants"), seeking unpaid minimum and overtime wages

and spread-of-hours pay, pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  (See generally Complaint, dated Mar. 11, 2025, Dkt. No. 1.)[1]

After an initial conference, the court referred the parties to court-annexed mediation where they resolved the dispute.  (See Order, dated Oct. 21, 2025; Order, dated Oct. 31, 2025.)  Without court approval or explanation, plaintiff filed a sealed motion for settlement approval on December 8, 2025.  (Sealed Letter Motion for Settlement Approval, dated Dec. 8, 2025, Dkt. No. 21.)  On January 5, 2026, plaintiff filed what appears to be substantively the same motion and settlement agreement on the public docket.  (Letter Motion for Settlement Approval, dated Jan. 5, 2026 ("Cheeks Letter"), Dkt. No. 22; Proposed Settlement Agreement, attached as Ex. A to Cheeks Letter, dated Dec. 3, 2025 ("PSA"), Dkt. No. 22-1.)  Judge Donnelly referred both motions to me by orders dated December 10, 2025 and January 14, 2026, respectively. (Order, dated Dec. 10, 2025; Order, dated Jan. 14, 2026.)

## LEGAL STANDARDS

In Cheeks, the Second Circuit held that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [United States Department of Labor] to take effect."  796 F.3d at 206.  Judicial or DOL approval is required because "low wage employees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly."  Id. at 205 (quoting Socias v. Vornado Realty L.P., 297 F.R.D. 38, 40 (E.D.N.Y. 2014)).  "When presented with a settlement for approval, a district

---

[1]  This lawsuit was initially filed as a putative collective action, but was never conditionally certified, nor did any opt-in plaintiff join the action.

court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher v. SD Prot. Inc., 948 F.3d 593, 606 (2d Cir. 2020). "If a district court concludes pursuant to Cheeks that a proposed settlement is unreasonable in whole or in part, the court cannot simply rewrite the agreement—it must reject the agreement or give the parties an opportunity to revise it." Id. at 605.

Although the Second Circuit has not established an exhaustive list of factors that district courts should consider when reviewing FLSA settlements, it has identified the following factors that district courts typically use:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Id. at 600. In addition, courts should not approve settlements that contain "highly restrictive confidentiality provisions, overbroad releases that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues, and any provision that would set the fee for plaintiff's attorney . . . without adequate documentation." McPherson v. Look Ent. Ltd., No. 23 CV 4273, 2025 WL 43165, at *3 (E.D.N.Y. Jan. 7, 2025) (internal quotation marks and alterations omitted) (quoting Cheeks, 796 F.3d at 206).

## DISCUSSION

I.    Settlement Amount

The settlement agreement would provide plaintiff with a recovery that is substantial and fair considering the litigation risks, and within the possible range of recovery,

3

while avoiding the substantial burdens and expenses of additional litigation.  Defendants agree to pay plaintiff a total of $72,000, of which plaintiff's counsel would receive $25,305.30 comprising $1,305.30 in costs and $24,000 in fees.  (PSA ¶ 2.)  After the deduction of attorney's fees and costs, Lee's net recovery would be $46,694.70.[2]  Plaintiff estimates his range of possible recovery as between $0 and $119,600.87.  (Cheeks Letter at 3.)  A net recovery of $46,694.70 represents thirty-nine percent of his maximum alleged damages.  This percentage is reasonable. See Khan v. Young Adult Inst., Inc., No. 18 CV 2824, 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) (collecting cases of reasonable FLSA settlements ranging from twenty-five to forty percent of the plaintiff's maximum recovery).

Absent a settlement, plaintiff states that he would face significant litigation risks; defendants dispute all of plaintiff's allegations and claim to have payroll records establishing that plaintiff did not work over forty hours per week and was not entitled to overtime wages. (Cheeks Letter at 4.)  Due to the anticipated risks and costs associated with further litigation— which, according to plaintiff, would require "no less than six depositions, review of voluminous records, and a trial" (id.)—I find the settlement amount to be fair.  I am also persuaded that the settlement agreement was negotiated at arm's length, and that there is no evidence of fraud or collusion.  Flores v. Dynamic Wireless NYC LLC, No. 21 CV 6160, 2022 WL 3363584, at *2 (S.D.N.Y. July 1, 2022) (finding that a settlement resulting from court-appointed mediation reflected arm's-length negotiations).

---

[2]  Courts evaluate the fairness of a plaintiff's recovery after deducting attorney's fees and costs. Cucul v. Major Cleaning, Inc., 761 F. Supp. 3d 545, 551 n.1 (E.D.N.Y. 2025) (collecting cases).

II.    Other Provisions

"A reviewing court must ensure that the settlement agreement does not run afoul of any of the Cheeks concerns, which include, *inter alia*, highly restrictive confidentiality provisions, overbroad releases, unsupported attorneys' fee awards, and restrictions on attorneys' future representations." Horta v. Kings Logistics, LLC, No. 22 CV 2508, 2023 WL 11862137, at *4 (E.D.N.Y. July 5, 2023) (citing Cheeks, 796 F.3d at 206).  Three provisions in the settlement agreement make it impossible for the court to approve it in present form.

A.  Release Provision

First, the settlement agreement contains an unacceptably overbroad general release provision.  (PSA ¶ 3.1.)  Under the agreement, Lee—along with "his heirs, executors, administrators, successors, assigns, and representatives (collectively, the 'Releasing Parties')"—must release defendants

> —and each of their past, present, and future parents, subsidiaries, affiliates, divisions, related entities, insurers, predecessors, successors, assigns, owners, shareholders, members, partners, directors, officers, managers, employees, agents, representatives, benefit plans, plan fiduciaries, plan administrators, attorneys, and all persons or entities acting by, through, under, or in concert with any of them (collectively, the "Released Parties")—from any and all claims, demands, actions, causes of action, obligations, liabilities, damages, penalties, costs, expenses, at attorneys' fees of every kind, nature, and description whatsoever, whether known or unknown . . . arising out of or relating in any way to Plaintiff's employment with, compensation from, or separation of employment from Defendants, or any alleged acts or omissions occurring during that employment relationship, from the beginning of time through the date Plaintiff executes this Agreement.

(Id.)  This release is overbroad, "in that [it] appear[s] to extend to numerous persons and entities only tenuously connected to this action, and purport[s] to release them not only from claims arising out of that connection but also from wholly unrelated claims." Souffrant v. 14-15

5

Mertens Place Corp., No. 19 CV 5482, 2020 WL 1166231, at *2 (S.D.N.Y. Mar. 11, 2020); see

also Lara v. Air Sea Land Shipping & Moving Inc., No. 19 CV 8486, 2019 WL 6117588, at *2–3

(S.D.N.Y. Nov. 18, 2019) (rejecting release extending to the defendant's "parent company,

affiliates, subsidiaries, divisions, related entities, predecessors, successors, and assigns and their

current and former owners, principals, members, shareholders, partners, officers, directors,

trustees, managers, employees, attorneys, insurers, and agents, in their individual, representative,

and business capacities"); Garcia v. Good for Life by 81, Inc., No. 17 CV 7228, 2018 WL

3559171, at *4 (S.D.N.Y. July 12, 2018) (rejecting settlement agreement purporting to release

"not only the named defendants but also 'all presently or formerly related or affiliated persons or

entities, family members, or successors, and the employees of any such entity, and any otherwise

related persons or entities who Plaintiffs claim or may claim employed them'").  "To pass muster

under Cheeks, [paragraph 3] must be limited to include only the named defendants, the corporate

defendants' predecessors and successors, and any other person or entity that plaintiff[] claim[s],

or may claim, to have been [his] employer . . . ."  Garcia, 2018 WL 3559171, at *4.

The release provision is also overbroad because it relieves defendants of liability

for claims wholly unrelated to the instant wage-and-hour action.  Courts in this circuit routinely

reject release provisions that "waive practically any possible claim against the defendants,

including unknown claims and claims that have no relationship whatsoever to wage-and-hour

issues." Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015); see also

Garcia v. Jambox, Inc., No. 14 CV 3504, 2015 WL 2359502, at *3 (S.D.N.Y. Apr. 27, 2015)

(provision releasing defendants "from any and all charges, complaints, claims, and liabilities of

any kind whatsoever" was "not 'fair and reasonable' because it encompasse[d] far too broad a

range of possible claims").  The release provision here requires plaintiff to waive "any and all

6

claims . . . , whether known or unknown, . . . from the beginning of time through the date Plaintiff executes this Agreement." (PSA ¶ 3.1.) It then recites, at length, a nonexclusive list of statutes and common law claims from which plaintiff releases defendants, including Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Genetic Nondiscrimination Act, among others. (Id. ¶ 3.2.2.) Also released are "any claims arising under any common law theory, including but not limited to, breach of contract, . . . defamation, negligent or intentional infliction of emotional distress, . . . or any other tort or contract claim." (Id. ¶ 3.2.4.) This court "joins those courts that have refused to 'countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute.'" Lazaro-Garcia v. Sengupta Food Servs., No. 15 CV 4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (quoting Flood v. Carlson Rests. Inc., No. 14 CV 2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015)). Accordingly, I respectfully recommend that the court not approve the settlement agreement until the release is limited to the claims at issue in this action.

      B. Non-Disparagement Clause

The settlement agreement must also be rejected because it contains a one-way non-disparagement provision that bars plaintiff, but not defendants, from

> mak[ing], publish[ing], or communicat[ing] to any person or entity, in any form (including but not limited to oral, written, or electronic statements, social-media posts, or online reviews), any statement that disparages, defames, criticizes, or in any way harms or could reasonably be expected to harm the reputation, goodwill, or business interests of Defendants or any of their officers, directors, shareholders, employees, or affiliates.

7

(PSA ¶ 8.1.)[3]  Courts in this circuit "routinely reject proposed settlement agreements that contain non-disparagement clauses, as they 'bar plaintiffs from openly discussing their experiences litigating [their] wage-and-hour case[s]' and 'run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair.'"  Davis v. T&T Express Shipping, LLC, No. 22 CV 1936, 2024 WL 1077819, at *2 (S.D.N.Y. Feb. 6, 2024) (alterations in original) (quoting Rodriguez v. Taco Mix LLC, No. 21 CV 3644, 2023 WL 5051898, at *3 (S.D.N.Y. July 5, 2023)); see also Nights of Cabiria, 96 F. Supp. 3d at 178 ("[T]he Court will not approve any provisions in the Agreement that would bar plaintiffs from openly discussing their experiences litigating this wage-and-hour case.").

Although the non-disparagement clause provides a carve-out for "truthful statements required by law, in response to a lawful subpoena or governmental inquiry" and participation "in investigations by any governmental agency," it does not permit plaintiff to make truthful statements outside of such inquiries.  (PSA ¶ 8.2.)  Such an overbroad non-disparagement provision is contrary to public policy because it "prevent[s] the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights."  Felix v. Breakroom Burgers & Tacos, No. 15 CV 3531, 2016 WL 3791149, at *3 (S.D.N.Y. Mar. 8, 2016).  That concern is heightened where, as here, an action filed on behalf of a putative collective settles for the benefit of the named plaintiff alone.  See DePietro v. Levitt LLP, 706 F. Supp. 3d 375, 377 (E.D.N.Y. 2023).  "While the court is cognizant that consideration for a settlement payment will

---

[3]  Paragraph 8 ("Non-Disparagement") notwithstanding, plaintiff's counsel states that "[t]he terms of the Settlement Agreement are consistent with Cheeks.  For example, the release . . . is limited to wage-and-hour claims and there are no confidentiality or non-disparagement provisions."  (Cheeks Letter at 6.)

not render 'every non-disparagement clause in an FLSA settlement *per se* objectionable,' there still must be room for free and open discussion for the parties to express their experience litigating the applicable matter." Davis, 2024 WL 1077819, at *2 (quoting Nights of Cabiria, 96 F. Supp. 3d at 181). Accordingly, I respectfully recommend that the court not approve the non-disparagement clause as written. See Alvarez v. Schnipper Rests. LLC, No. 16 CV 5779, 2019 WL 5682633, at *4 (S.D.N.Y. Nov. 1, 2019) (rejecting non-disparagement clause that lacked carve-out for truthful statements not required by law); Snead v. Interim HealthCare of Rochester, Inc., 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018) (approving a settlement that specifically stated "[a]ny party is allowed to make truthful statements related to or concerning the Action").

C. "No Rehire" Provision

Paragraph 9 of the settlement agreement, titled "No Rehire," prohibits plaintiff from seeking or accepting employment "directly or indirectly, with any Defendant or their affiliates." (PSA ¶ 9.) "Courts in this Circuit have consistently rejected FLSA settlements that seek to prevent plaintiffs from having a future employment relationship with the defendant as contrary to the underlying aims of the FLSA." Burgos v. Ne. Logistics, Inc., No. 15 CV 6840, 2018 WL 2376481, at *7 (E.D.N.Y. Apr. 26, 2018) (collecting cases), report and recommendation adopted, 2018 WL 2376300 (E.D.N.Y. May 24, 2018). The parties "offer not a shred of explanation—and cite no cases—to justify inclusion of" this provision. Nieto v. Izzo Constr. Corp., No. 15 CV 6958, 2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018) (denying motion for approval of settlement agreement containing, *inter alia*, a "no-reemployment/no-rehire clause"). Accordingly, I respectfully recommend that the court not approve the settlement agreement so long as it includes a "no rehire" provision as contained in paragraph 9.

III.   Attorney's Fees

Because I recommend that the motion for settlement approval be denied, I recommend, too, that plaintiff's request for attorney's fees be denied.  See Fisher, 948 F.3d at 600 ("Under the FLSA and the NYLL, a *prevailing* plaintiff is entitled to reasonable attorneys' fees and costs." (emphasis added)).  However, even if the motion were to be granted and the settlement approved, plaintiff's counsel's request for attorney's fees still should be denied.  See Luna v. J.S. Held LLC, No. 21 CV 3072, 2023 WL 2214012, at *7 (E.D.N.Y. Feb. 24, 2023).

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request."  Gurung v. White Way Threading LLC, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016).  "In this circuit, a proper fee request 'entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.'"  Nights of Cabiria, 96 F. Supp. 3d at 181 (quoting Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)).  The present submission includes none of this information. "Plaintiff's counsel's failure to provide this documentation necessarily warrants denial of the fee application."  Luna, 2023 WL 2214012, at *8 (collecting cases).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the motion for settlement approval be denied without prejudice.  Any objections to this Report and Recommendation must be filed electronically within fourteen days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

*Robert M. Levy*

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       June 15, 2026

10